UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RIGGS DRUG COMPANY, INC., )
)
    Plaintiff, )
)
v. ) No.: 3:09-CV-538
) (VARLAN/SHIRLEY)
AMERISOURCEBERGEN )
DRUG CORPORATION, )
)
    Defendant. )

## **MEMORANDUM OPINION**

This civil action is before the Court on defendant Amerisourcebergen Drug Corporation's ("Amerisourcebergen") Motion to Dismiss the Amended and Restated Complaint [Doc. 58]. Plaintiff Riggs Drug Company, Inc. ("Riggs") filed a response in opposition to the motion to dismiss [Doc. 79]. Amerisourcebergen filed a reply to the response [Doc. 83]. The motion to dismiss is now ripe for the Court's consideration.

**I.    Background**

Riggs filed the original complaint in this case in the Chancery Court for Knox County, Tennessee [Doc. 1-1]. The case subsequently was removed to this Court [Doc. 1]. Riggs then filed a first amended and restated complaint for a declaratory judgment and other relief as well as a second amended and restated complaint for a declaratory judgment and other relief [Docs. 55].

In the second amended and restated complaint, Riggs alleges as follows: Riggs is a Tennessee corporation with its principal office in Campbell County, Tennessee [*Id.*, ¶ 1].

Amerisourcebergen is a Delaware corporation with its principal office in Chesterbrook, Pennsylvania [*Id.*, ¶ 2]. Riggs owns and operates three retail pharmacies in Campbell County, Tennessee, and one retail pharmacy in Knox County, Tennessee [*Id.*, ¶ 6]. Amerisourcebergen is a wholesale distributor of pharmaceutical products, including prescription and over-the-counter pharmaceuticals [*Id.*, ¶ 7]. Amerisourcebergen solicits, and sells products to, retail pharmacies [*Id.*].

Cardinal Health, Inc. ("Cardinal") is a competing wholesale distributor of prescription and over-the-counter pharmaceuticals [*Id.*, ¶ 8]. Riggs has maintained a "primary purchase relationship" with Cardinal for a number of years [*Id.*]. Mark Franklin, an Amerisourcebergen representative, has repeatedly called on Riggs in an effort to induce Riggs to buy prescription and over-the-counter pharmaceuticals from Amerisourcebergen rather than from Cardinal [*Id.*, ¶ 9].

In May 2009, Riggs orally agreed, through its principal officer, Robert Fannon, to enter into a purchasing relationship with Amerisourcebergen, as long as Amerisourcebergen could provide better pricing than Cardinal [*Id.*, ¶ 13]. Amerisourcebergen representatives assured Riggs that it could, and would, provide better pricing than Cardinal [*Id.*]. In particular, Amerisourcebergen representatives proposed to sell pharmaceuticals at a 3.9 percent discount from cost for branded pharmaceuticals and at an 8.0 percent discount from cost for generic pharmaceuticals [*Id.*, ¶ 14]. Amerisourcebergen representatives also promised Riggs additional financial incentives, some of them contingent upon purchase

2

volume and upon the duration of the working relationship between Riggs and Amerisourcebergen [*Id.*].

Amerisourcebergen representatives thereafter requested that Riggs sign a single-page document so that Riggs could be entered into the Amerisourcebergen "system" [*Id.*, ¶¶ 15, 17]. Amerisourcebergen representatives assured Riggs that once this document was signed, the remaining details of the purchasing relationship would be finalized and put into writing [*Id.*, ¶ 15]. Based upon these representations, Mr. Fannon signed the document [*Id.*, ¶ 16]. A copy of the document was not provided to Riggs at the time it was signed on the pretext that such would be provided after it had been signed by Amerisourcebergen [*Id.*]. Riggs was never provided with such copy [*Id.*, ¶ 17].

Soon after Mr. Fannon signed this document, Amerisourcebergen representatives came to Riggs's principal location in Tennessee to inform Riggs's representatives that the promised pricing arrangements could not be made available [*Id.*, ¶ 18]. Amerisourcebergen representatives urged Riggs to agree to a different set of pricing arrangements [*Id.*]. Amerisourcebergen then proposed a purchase pricing arrangement based on a 3.2 percent discount from cost for branded pharmaceuticals and an 8.0 percent discount from cost for generic pharmaceuticals [*Id.*, ¶ 19]. Despite objecting to this new arrangement, Riggs's representative signed two additional documents with the understanding that the pricing arrangements would be "worked out," and that Amerisourcebergen would provide a better pricing arrangement than Cardinal [*Id.*, ¶¶ 19-20].

Riggs later purchased products from Amerisourcebergen [*Id.*, ¶ 21]. Riggs alleges that these purchases were made in order to "test the working relationship" between Riggs and Amerisourcebergen, and were "based on the [Amerisourcebergen] representations and the inducement of pricing that would be better than that offered by Cardinal" [*Id.*]. Riggs further alleges that it "soon became apparent to Riggs that [the] contractual arrangements were not going to be finalized in any manner consistent with the discussions among the parties and the numerous representations made by [Amerisourcebergen] representatives" [*Id.*, ¶ 23].

Representatives from Riggs and Amerisourcebergen later met in Knox County "in an effort to resolve the issue of whether a contract could be finalized that would provide pricing arrangements better than Riggs had with Cardinal" [*Id.*, ¶¶ 23, 24]. At this meeting, Riggs's representatives inquired as to whether a better pricing arrangement than that which Riggs had with Cardinal would be incorporated into the final contract documents between Riggs and Amerisourcebergen [*Id.*, ¶ 25]. Amerisourcebergen representatives indicated that such an arrangement could not be put into place [*Id.*, ¶ 26]. Scott Snyder of Amerisourcebergen then informed Riggs's representatives that the parties would "shake hands and walk away friends" [*Id.*].

Riggs resumed its purchase of pharmaceuticals and other supplies from Cardinal [*Id.*, ¶ 27]. Amerisourcebergen then filed a breach of contract suit against Riggs in the Court of Common Pleas of Chester County, Pennsylvania [*Id.*]. The Pennsylvania state suit against Riggs was dismissed on January 11, 2010 for lack of personal jurisdiction [*see* Doc. 15-1].

Riggs thereafter filed its action for a declaratory judgment and other relief in this Court [*see* Docs. 18, 55].

On the basis of the allegations in its second amended and restated complaint, Riggs "request[s] that the Court determine and declare that Riggs is not subject to personal jurisdiction in the state of Pennsylvania," and "that there is no binding and enforceable contract in existence between Riggs and [Amerisourcebergen] [Doc. 55, ¶¶ 37, 40]. Riggs also contends that, "[t]o the extent that it could be argued by [Amerisourcebergen] that a contract is in existence" in this case, the documents evincing the existence of that contract "were signed only by reason of the fraudulent inducement" practiced by Amerisourcebergen representatives [*Id.*, ¶¶ 44, 52]. Lastly, Riggs brings a claim, based upon Amerisourcebergen's allegedly "unfair or deceptive acts or practices," for violations of the Tennessee Consumer Protection Act (the "TCPA"), codified at Tenn. Code Ann. §§ 47-18-101, *et seq.* [*Id.*, ¶¶ 46-50].

Amerisourcebergen filed a Motion to Dismiss the Second Amended and Restated Complaint contending that (1) Riggs's request for declaratory relief as to the personal jurisdiction issue must be dismissed because it is moot; (2) Riggs's fraudulent inducement claim must be dismissed because (a) the claim is based upon parol evidence that is directly contradicted by the express terms of the parties' written agreement and (b) Riggs has failed to raise factual allegations sufficient to support such a claim; and (3) Riggs's TCPA claim must be dismissed because Riggs has failed to raise factual allegations sufficient to support that claim [*see* Docs. 58, 59].

5

Riggs filed a response in opposition to the motion to dismiss contending that the parol evidence rule does not bar Riggs's claim for fraudulent inducement, and that the second amended and restated complaint states claims for relief for fraudulent inducement and for violations of the TCPA that are plausible on their face and thus satisfy federal pleading requirements [Doc. 79]. Amerisourcebergen filed a reply to the response reasserting the arguments raised in its motion to dismiss [Doc. 83].

The Court has carefully considered the motion to dismiss, the response, and the reply in light of the applicable law. For the reasons that follow, the request for a declaratory judgment will be denied as moot and the motion to dismiss will be denied.

## II. Riggs's Request for a Declaratory Judgment that Riggs is not Subject to Personal Jurisdiction in Pennsylvania

Riggs requests that the Court issue a declaratory judgment that Riggs is not subject to personal jurisdiction in Pennsylvania [*see* Doc. 55, ¶ 37]. By the time that Riggs had filed its second amended and restated complaint, however, the Court of Common Pleas of Chester County, Pennsylvania had dismissed the action for lack of personal jurisdiction [*see* Docs. 15, 15-1]. Thus, as Amerisourcebergen points out in its motion to dismiss, "the issue of whether the Pennsylvania courts have jurisdiction over Riggs has already been decided" [Doc. 59]. Riggs presents no argument that this issue is not moot in its response to the motion to dismiss; indeed, Riggs does not even address this issue in its response [*see* Doc. 79]. The Court will therefore deny as moot Riggs's request for a declaratory judgment that Riggs is not subject to personal jurisdiction in Pennsylvania.

## III. Amerisourcebergen's Request that the Court Dismiss Riggs's Claims for Fraudulent Inducement and Violation of the Tennessee Consumer Protection Act

### A. Standard of Review

Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. To survive a motion to dismiss, a pleading need contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. A formulaic recitation of the elements of a cause of action will not do. *Id.* Nor will an "unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A pleading must instead "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1937.

### B. Fraudulent Inducement Claim

Although Riggs alleges that no contract exists between it and Amerisourcebergen, Riggs contends that, if a contract exists, "such documents were signed only by reason of the fraudulent inducement of the [Amerisourcebergen] representatives" [Doc. 55, ¶ 44]. As

Amerisourcebergen's motion to dismiss does not address Riggs's claim that there is no enforceable contract, the Court will not speculate on such claim at this time. Rather, the Court addresses only Amerisourcebergen's arguments that (1) Riggs's claim is barred by the parol evidence rule and (2) Riggs's has failed to allege factual allegations sufficient to support a claim for fraudulent inducement because Riggs "has failed to allege facts under which its reliance on any alleged fraud . . . is reasonable" [*see* Doc. 59].

### 1. Parol Evidence Rule

Amerisourcebergen argues that Riggs's fraudulent inducement claim should be dismissed for failure to state a claim because Riggs relies on parol evidence, particularly statements related to pricing, that, it argues, is directly contradicted by the terms of the Prime Vendor Agreement (the "PVA") [*see* Doc. 59]. In support of this argument, Amerisourcebergen contends that "[f]raudulent inducement claims based solely on parol evidence in the form of oral promises that are directly contradicted by the terms of an integrated writing are specifically excluded from the fraudulent inducement exception to the parol evidence rule" [*see id.*]. Riggs, alternatively, argues that "the parole [sic] evidence rule does not bar a claimant from proving a tort such as fraud and fraudulent inducement" [*see* Doc. 79].

The parties spend considerable portions of their motion papers citing and explaining federal and state law addressing the extent to which the parol evidence rule applies to the tort of fraudulent inducement in Tennessee. The Court has considered the parties' arguments as

well as the case law and finds that, under Tennessee law, the parol evidence rule does not apply to claims of fraudulent inducement and, consequently, does not preclude Riggs's claim.

Under Tennessee law, "parol evidence is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete and unambiguous, absent fraud or mistake or any claim or allegations thereof." *BKB Props., LLC v. SunTrust Bank*, No. 3:08-cv-529, 2009 WL 529860, at *11 (M.D. Tenn. Mar. 2, 2009) (citation and internal quotation marks omitted). The parol evidence rule, however, "applies only to contract claims and does not apply where a plaintiff alleges a fraudulent misrepresentation that induced that contract." *Id.* (citations omitted). *See also Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 n.4 (6th Cir. 2006) (noting that the parol evidence rule does not bar consideration of representations made during sales presentations as the rule does not apply to claims of fraudulent misrepresentation inducing a contract) (citation omitted); *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 567 (6th Cir. 2003) ("[T]he parol evidence rule does not apply to allegations of fraudulent misrepresentation inducing a party to enter a contract because under Tennessee law, promissory fraud sounds in tort, not in contract.") (citations omitted); *Butler v. Butler*, No. W2007-01257-COA-R3-CV, 2008 WL 5396019, at *4 (Tenn. Ct. App. Dec. 23, 2008) (stating that a fraudulent inducement claim is "based in tort, and the parol evidence rule does not bar parol evidence to prove the allege fraud even where the evidence contradicts the written contract") (citations omitted); *Hayes v. Washburn*, No. M2006-01135-COA-R3-CV, 2007 WL 3202765, at *5 n.3 (Tenn. Ct. App. Oct. 31, 2007) (noting that it was error for the trial court to consider parol evidence to contradict the terms

of the parties' agreement but that it was not error to consider parol evidence to determine whether fraudulent inducement invalidated the contract) (citation omitted).[1]

Riggs's claim for fraudulent inducement is not one sounding in contract but one sounding in tort. The parol evidence rule, therefore is not applicable to bar admission of oral statements pertaining to pricing. Such is the case even if the statements contradict the terms of the PVA.

### 2. Reasonable Reliance

Under Tennessee law, the elements for fraudulent inducement to contract are: "(1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance." *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000). Amerisourcebergen argues that Riggs fails to state a claim under Rule 12(b)(6)

---

[1] Amerisourcebergen relies heavily on *Hansen v. Liberty Partners, LLC*, No. 3:04-1099, 2005 WL 3527162, at *13 (M.D. Tenn. Dec. 22, 2005), in support of its argument that the parol evidence rule bars Riggs's claim for fraudulent inducement [*see* Docs. 59, 83]. *Liberty Partners* recognizes that a panel of the Tennessee Court of Appeals "indicated that it is permissible to use parol evidence to avoid liability on a contract on the ground of fraudulent inducement, but only if the subject matter of the parol evidence either is not addressed in, or does not contradict the express terms of the signed writing." *Id.* (citing *United Nat'l Real Estate, Inc. v. Thompson*, No. 01-A-01-9108-CV00269, 1992 WL 69642, at *7 (Tenn. Ct. App. Apr. 8, 1992)) (internal quotation marks omitted). The *Liberty Partners* court found that, even under the more stringent *Thompson* analysis, the parol evidence at issue would not be barred because it did not contradict the contract. The Court is not compelled to follow the analysis of *Liberty Partners*, especially given that no other court has done so. Moreover, the Court is not compelled to follow the analysis of *Thompson* as more recent Tennessee and federal courts apply the rule that the parol evidence rule does not apply to claims of fraudulent inducement.

because Riggs failed to allege facts demonstrating the fourth element, that is, that Riggs reasonably relied on Amerisourcebergen's alleged misrepresentations [*see* Docs. 59, 83]. In particular, Amerisourcebergen argues that Riggs could not have reasonably relied on any alleged misrepresentation because Riggs's president admits that he signed the PVA without reading or reviewing such [*Id.*]. It also argues Riggs's president should have done so given that the page he signed should have alerted him to the existence of additional pages [*Id.*].

Under Tennessee law, reasonable reliance is a question of fact for the jury to decide. *Corso Enters., Inc. v. Shop at Home Network, Inc.*, No. 3:04-cv-260, 2005 WL 2346986, at *8 (M.D. Tenn. Sept. 26, 2005) (noting such with respect to a claim for promissory fraud). Although a juror might determine that reliance on the misrepresentations Riggs sets forth in the amended and restated complaint was unreasonable, it is not for the Court to determine such at this time. Indeed, Amerisourcebergen cites no authority indicating the Court may dismiss Riggs's claim on such grounds [*see* Docs. 59, 83]. Accordingly, the Court finds that Amerisourcebergen's argument lacks merit.

Amerisourcebergen asserts no other arguments in support of dismissing Riggs's fraudulent inducement claim. Therefore, the Court finds Riggs's allegations are sufficient to survive a motion to dismiss.

### C. Tennessee Consumer Protection Act Claim

In order to recover under the TCPA, a plaintiff must demonstrate "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real,

11

personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 979-98 (E.D. Tenn. 2009) (quoting *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)). Although the TCPA "does not define the terms 'unfair' or 'deceptive,' the Tennessee Supreme Court has recognized that a deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer." *Whaley*, 650 F. Supp. 2d at 796 (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997)).

Amerisourcebergen moves to dismiss Riggs's TCPA claim on the grounds that Riggs failed to raise factual allegations sufficient to support such a claim [*see* Docs. 59, 83]. In particular, Amerisourcebergen asserts that Riggs failed to allege facts demonstrating its President was a reasonable consumer and, because a deceptive act is one that misleads a reasonable consumer, it failed to state a claim for relief [*Id.*]. Amerisourcebergen relies on the same analysis for this argument as it does for its argument that Riggs failed to state a claim for fraudulent inducement [*see id.*].

The Court finds that Amerisourcebergen's argument lacks merit. "Whether a particular act is unfair or deceptive is a question of fact." *Fayne v. Vincent*, 301 S.W.3d 162, 170 (Tenn. 2009) (citations omitted). Although a juror might determine that there was no deceptive act or practice because Riggs was not a reasonable consumer, it is not for the Court to determine such at this time. Indeed, again, Amerisourcebergen cites no authority indicating the Court may dismiss on such grounds [*see* Docs. 59, 83].

## IV.     Conclusion

For the reasons above, Riggs's request for a determination and declaration that Riggs is not subject to personal jurisdiction in Pennsylvania will be denied as moot. Amerisourcebergen's Motion to Dismiss the Amended and Restated Complaint [Doc. 58] will be denied.  An order accompanying this memorandum opinion will be entered.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE